UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Shannon Doll and Brittney Mandery,                    File No. 24-cv-136 (ECT/TNL)

        Plaintiffs,

v.                                                    **OPINION AND ORDER**

Trellis Walnut Towers LLC, Trellis Walnut
Towers GP LLC, Trellis Walnut Towers
Developer LLC, Trellis Management Co.,
and Trellis Maintenance, LLC,

        Defendants.

John L. Fossum, Bloomington, MN, and Paul Applebaum, Applebaum Law Firm, St. Paul, MN, for Plaintiffs Shannon Doll and Brittney Mandery.

Mary G. Dobbins, Landrum Dobbins LLC, Edina, MN, for Defendants Trellis Walnut Towers LLC, Trellis Walnut Towers GP LLC, Trellis Walnut Towers Developer LLC, and Trellis Management Co., and Christopher J. Van Rybroek, The Cincinnati Insurance Company, Coon Rapids, MN, for Defendant Trellis Maintenance, LLC.

       Plaintiffs Shannon Doll and Brittney Mandery are wheelchair-bound residents of the Walnut Towers apartment building in Mankato, Minnesota. The building has one elevator. Doll and Mandery depend on the elevator to come and go from their apartments and engage in daily activities, but the elevator was inoperable on several occasions between August 2022 and August 2023. In this case, Doll and Mandery claim that the elevator's inoperability amounted to disability discrimination prohibited by federal and Minnesota law.

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), and their motions will be granted.[1]  Non-merits justifications could have prompted this result: Except for Defendant Trellis Walnut Towers LLC, the Complaint lumps Defendants together, failing to identify what each Defendant did to violate the law, and Plaintiffs waived their opposition to the dismissal of Trellis Walnut Towers LLC by not responding to the arguments made in support of its dismissal.  Regardless, Plaintiffs' federal claims are not plausibly alleged and fail on their merits.  Plaintiffs' state-law claims will be dismissed without prejudice, leaving Plaintiffs the opportunity to pursue them in state court.

I[2]

The Walnut Towers apartment building "houses many Section 8 residents."  Compl. [ECF No. 1] ¶ 7.  The building is nine stories tall.  *Id.*  Doll and Mandery live on the fourth floor.  *Id.*  Each has a disability that limits her ability, or makes it impossible, to use the building's stairs.  *Id.* ¶ 8.  Doll and Mandery "therefore depend[] on a working elevator to enter and leave the building" and engage in daily activities.  *Id.*

---

[1]    There are five Defendants and two Rule 12(b)(6) motions.  The first motion was filed by just one Defendant: Trellis Maintenance, LLC.  ECF No. 15.  The second motion was filed by the remaining four Defendants collectively: Trellis Walnut Towers LLC, Trellis Walnut Towers GP LLC, Trellis Walnut Towers Developer LLC, Trellis Management Co.  ECF No. 20.  Unless noted otherwise, the motions are addressed together.

[2]    In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn entirely from the Complaint.  *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

The building's one elevator did not work on several occasions between August 2022 and August 2023, resulting in adverse consequences for Doll and Mandery:

- **August 22, 2022**: Mandery had to cancel "an important medical appointment . . . because the elevator was out of service and she could not leave the building." *Id*. ¶ 15.

- **August 27, 2022**: "PCA Services [had to] carry [Mandery] from the 4th floor to the first floor because the elevator was broken." *Id*. ¶ 16. PCA Services also had to "return [Mandery] to her apartment and carry her medical equipment back up to the 4th floor because the elevator still was broken on her return from her medical appointment." *Id*.

- **October 28, 2022**: "[T]he elevator was down for 3 hours . . . prevent[ing] . . . Doll and Mandery from leaving the building to attend a party." *Id*. ¶ 17.

- **May 27, 2023**: "[T]he elevator was down at 7:30 p.m. preventing . . . Doll and Mandery from leaving the building." *Id*. ¶ 18.

- **July 3, 2023**: "The elevator was off-line . . . from 8 a.m. to 12:45 p.m. . . . . Doll was trapped inside her apartment, but able to get out. She was forced to get her dog up and down the stairs several times while waiting for a repair." *Id*. ¶ 19.

- **August 7, 2023**: "[T]he elevator 'dropped' a floor and repair crew was called, [and] Mandery had to cancel a medical appointment as a result." *Id*. ¶ 21.

- **August 9, 2023**: The "elevator was broken again preventing Plaintiffs from coming or going." *Id*. ¶ 22.

*Id*. ¶¶ 14–22, 25. In addition to these outages' specific, in-the-moment consequences, Doll and Mandery allege more generally that elevator delays and outages in the Walnut Towers harm them disproportionately because they "may need to lie down and rest regularly, [require] ready access to a restroom or may not be able to stand or stay seated in a

3

wheelchair for an extended period without causing pain." *Id.* ¶ 25.  On August 21, 2023, Doll and Mandery "sent notices . . . requesting repairs to the elevator." *Id.* ¶ 23.[3]

Doll and Mandery assert four claims in their Complaint.  (1) They claim Defendants discriminated against them because of their handicaps in violation of the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601–3619.  *Id.* ¶¶ 27–36.  (2) They claim Defendants discriminated against them because of their disabilities in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  *Id.* ¶¶ 37–49.  (3) They claim Defendants discriminated against them because of their disabilities in violation of the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01–363A.50.  *Id.* ¶¶ 50–59.  (4) And they claim "Defendants' maintenance and other personnel have entered their apartments without notice or permission" in violation of Minn. Stat. § 504B.211.  *Id.* ¶¶ 60–65.  For relief, Doll and Mandery seek non-specific injunctive relief, compensatory and punitive damages, and attorneys' fees and costs.  *See id.* at 14.

## II

When a plaintiff sues more than one defendant, the complaint must allege what each defendant did to violate the law.  "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."  *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012);

---

[3]     Perhaps the elevator broke down on other dates not alleged in the Complaint.  The problem is that the Complaint does not allege any facts regarding the timing, frequency, or other circumstances of these outages.

4

*see Wilson v. Minn. Sex Offender Program*, No. 18-cv-3352 (NEB/KMM), 2019 WL 5149935, at * 2 (D. Minn. June 21, 2019) ("[C]laims that encompass 'all defendants' are not adequate to state a well-pled claim against *any* of the defendants."), *R. & R. adopted*, 2019 WL 3716602 (D. Minn. Aug. 7, 2019).

The Complaint does not comply with this pleading rule. It lumps all Defendants together many times without alleging what each Defendant did to violate what law. *See* Compl. ¶¶ 2– 4, 7, 26, 32– 34, 36, 38, 41–48, 54, 56–58, 61–62. For practical as much as legal reasons, this violation would independently justify the dismissal of four of the five named Defendants.

Start with the exception: Trellis Walnut Towers LLC. The Complaint alleges, based on Blue Earth County property tax records, that Trellis Walnut Towers LLC owns the Walnut Towers apartment building. Compl. ¶¶ 7, 9. Based on this allegation, it seems reasonable to understand the Complaint to allege that Trellis Walnut Towers LLC is ultimately responsible for the apartment building and its elevator's maintenance and operation. And because the elevator's maintenance and operation are the Complaint's primary focus, it makes practical sense to understand the Complaint's many references to "Defendants" collectively as including Trellis Walnut Towers LLC.[4]

---

[4]     This approach is consistent with Defendants' positions on their Rule 12(b)(6) motions. A public property record filed in support of the motions appears to confirm that Trellis Walnut Towers LLC owns the apartment building. ECF No. 22 at 3. And Trellis Walnut Towers LLC does not argue it should be dismissed because the Complaint lumps it with the other Defendants.

The Complaint, however, includes no comparable allegations with respect to the remaining four Defendants: Trellis Walnut Towers GP LLC, Trellis Walnut Towers Developer LLC, Trellis Management Company, and Trellis Maintenance, LLC.   The Complaint groups them together.  It does not identify each organization's role with respect to the Trellis Towers apartment building.  It does not identify any one of these entities as having responsibility for the building's elevator.  It does not identify any other basis for liability as to any of these entities.  These four Defendants could be dismissed on just this basis.  But there is more.  The Complaint concedes that these four Defendants "have an *unknown* relationship, or ownership connection" to the building's owner, Trellis Walnut Towers LLC.  Compl. ¶ 10 (emphasis added).  In other words, Plaintiffs admit they lack knowledge regarding what, if any, connection any of these four entities have to the building or its owner.  Separate from the "grouping" problem, this lack of knowledge would justify these four Defendants' dismissal.[5]

### III

The brief Plaintiffs filed in opposition to the Rule 12(b)(6) motion filed by Trellis Walnut Towers LLC and its co-movants raises a waiver problem.  A litigant's complete failure to respond to an opposing party's argument is often construed as a waiver.  *See Dorosh v. Minn. Dep't of Hum. Servs.*, No. 23-cv-1144, at *9 (ECT/LIB), 2023 WL 6279374 (D. Minn. Sept. 26, 2023) ("A plaintiff waives its claims by failing to respond to

---

[5]     It is difficult to understand how business organizations might reasonably be sued based on an "unknown" affiliation with a plausibly liable organization.  *See* Fed. R. Civ. P. 11(b)(3).

a defendant's arguments on a motion to dismiss."); *Hopper v. BMO Harris Bank, N.A.*, No. 22-cv-1828 (JRT/JFD), 2023 WL 4936160, at *3 (D. Minn. Aug. 2, 2023) ("Failure to respond to arguments in favor of dismissal may constitute waiver and abandonment, justifying dismissal on that basis alone."); !*Doe v. Mayorkas*, No. 22-cv-00752 (ECT/DTS), 2022 WL 4450272, at *2 (D. Minn. Sept. 23, 2022) (citing *Espey v. Nationstar Mortg., LLC*, No. 13-cv-2979 (ADM/JSM), 2014 WL 2818657, at *11 (D. Minn. June 19, 2014) (collecting cases)); *Christensen v. PennyMac Loan Servs.*, 988 F. Supp. 2d 1036, 1042 (D. Minn. 2013) ("Plaintiff's failure to respond amounts to a waiver, and on that basis alone, defendants' motion to dismiss should be granted.") (collecting cases).

Here, Plaintiffs filed opposition briefs, but their brief in opposition to the motion filed on behalf of Trellis Walnut Towers LLC (and Trellis Walnut Towers GP, LLC, Trellis Walnut Towers Developer LLC, and Trellis Management Company) did not respond to the arguments raised in these Defendants' motion. This opposition brief is six pages long. ECF No. 32. It contains an introduction describing the elevator problem generally and identifies the source of law underlying each of the Complaint's four counts. *Id.* at 1–2. The brief repeats the Complaint's factual allegations. *Id.* at 2–4. It describes the Rule 12(b)(6) plausibility standard. *Id.* at 4. It quotes a paragraph of the Minnesota Human Rights Act, Minn. Stat. § 363.10 subdiv. 1(2), and cross-cites 42 U.S.C. § 3604(f)(3)(B). *Id.* at 5. It argues: "The complaint in this case states adequate facts for the court to find a violation of law and a right to recover damages." *Id.* It then returns to the Rule 12(b)(6) plausibility standard, quoting a First Circuit panel's description of the standard. *Id.*

(quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 14–15 (1st Cir. 2011)).  And it concludes with the following paragraph:

> Plaintiffs in this case have stated claims and pleaded facts adequate for the court to find a claim for relief plausible.  The court need not find it probable, only adequate to proceed to discovery.  Discovery will allow the parties to clarify and expand on the evidence, and the court should deny the motion for 12(b)(6) dismissal.

*Id.*  The brief, in other words, advances no discernable argument responsive to the dismissal grounds raised by Trellis Walnut Towers LLC and the other Defendants who joined the motion.  Owing to its lack of responsive, substantive content, it is not reasonable to distinguish Plaintiffs' opposition brief from a situation where a non-moving party elects not to respond at all.

*

The analysis could end there.  Only Plaintiffs' claims against Trellis Walnut Towers LLC survived the "grouping" problem identified in Part II, but as explained in Part III, Plaintiffs waived their opposition to the motion filed on behalf of Trellis Walnut Towers LLC by filing an opposition brief that did not respond to the arguments raised in that motion.  Regardless, the Complaint will not be dismissed on these grounds, and the merits of Plaintiffs' claims will be analyzed.

IV

A

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all the factual allegations in the complaint and draw all reasonable

8

inferences in the plaintiffs' favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

B

1

The Fair Housing Amendments Act (or "FHAA"), as relevant here, prohibits housing discrimination based on an individual's "handicap." 42 U.S.C. § 3604(f). "Handicap" is a "physical or mental impairment which substantially limits one or more of such person's major life activities." *Id.* § 3602(h)(1). Under the FHAA, it is unlawful to "make unavailable or deny, a dwelling to any buyer or renter because of a handicap." *Id.* § 3604(f)(1). The statute also makes it unlawful to "discriminate against any person . . . in the provision of services or facilities in connection with such dwelling, because of a handicap." *Id.* § 3604(f)(2). A Department of Housing and Urban Development regulation identifies actions prohibited under § 3604(f)(2). 24 C.F.R. § 100.65 (2024). These include

9

"[f]ailing or delaying maintenance or repairs of sale or rental dwellings because of . . . handicap." *Id.* § 100.65(b)(2).[6]

A plaintiff may show FHAA-violating discrimination under three theories: "disparate treatment, disparate impact, and failure to make a reasonable accommodation." *Kirsten v. Cape Royale at Ski Harbor Condo. Owners Ass'n Inc.*, No. 2:22-cv-04109-MDH, 2024 WL 377831, at *2 (W.D. Mo. Jan. 31, 2024) (citing *Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt., Inc.*, 778 F. Supp. 2d 1028, 1037 (D.N.D. 2011)). The Complaint does not specify which of these theories Plaintiffs intend to pursue here. The safer course, then, is to presume Plaintiffs intend to pursue all three theories and to apply the law governing each theory to the Complaint's factual allegations.

(a) A disparate-treatment claim under the FHAA is "tested under the same framework as Title VII disparate-treatment claims." *Gallagher v. Magner,* 619 F.3d 823, 831 (8th Cir. 2010). This framework requires answering whether a defendant treated a plaintiff "less favorably than others based on" a plaintiff's disability. *Id.* "Proof of discriminatory purpose is crucial for a disparate treatment claim." *Id.* Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences"— "[i]t implies that the decisionmaker . . . selected or reaffirmed a particular course of action 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."

---

[6]     Plaintiffs claim that Defendants' conduct violates "42 U.S.C. § 3604(b)." Compl. ¶ 36. Section 3604(b), however, does not address handicap-based discrimination. Section 3604(b) addresses housing discrimination "because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The Complaint alleges no facts that might conceivably be understood to assert a discrimination claim under any of the categories listed in § 3604(b).

10

*Folger v. City of Minneapolis*, 43 F. Supp. 3d 922, 936 (D. Minn. 2014) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

Here, the Complaint alleges no facts suggesting intentional handicap-based discrimination. The Complaint's theory is that the Walnut Towers' only elevator became unavailable on several occasions due to repeated mechanical failures. There is no suggestion that these mechanical failures resulted from any Defendant's discriminatory intent. Though the elevator's unavailability may have impacted Doll and Mandery differently or more significantly than other residents, the outages adversely affected every building resident who regularly used the elevator. Nor does the Complaint allege facts tending to show that any Defendant delayed repairing the elevator with the intent to discriminate based on residents' or some other associated persons' handicaps. *See Congdon v. Strine*, 854 F. Supp. 355, 360–61 (E.D. Pa. 1994) (entering summary judgment against FHAA discriminatory treatment claim based on a building's repeated elevator failures because plaintiffs identified no evidence showing that defendant "acted differently in providing elevator services" to handicapped tenants).

(b) "In contrast to a disparate-treatment case where a 'plaintiff must establish that the defendant had a discriminatory intent or motive,' a plaintiff bringing a disparate-impact claim challenges practices that have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1110 (8th Cir. 2017) (quoting *Tex. Dep't of Housing & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015)); *see Gallagher*, 619 F.3d at 833 (recognizing that an FHAA disparate-impact claim does not require a plaintiff "to show

11

that the policy or practice was formulated with discriminatory intent"). A prima facie FHAA disparate-impact claim requires a plaintiff to "show a facially neutral policy ha[d] a significant adverse impact on members of a protected minority group." *Gallagher*, 619 F.3d at 833 (alteration in original) (quoting *Oti Kaga, Inc. v. S.D. Hous. Dev. Auth.*, 342 F.3d 871, 883 (8th Cir. 2003)).

Here, the Complaint does not identify a policy or practice that is plausibly susceptible to a disparate-impact claim. From time to time, elevators fail. It is difficult to hypothesize how elevator failures by themselves might show a policy or practice. Evidently recognizing this, the Complaint alleges: "Defendants maintain a pattern and practice of denying Plaintiffs full and equal access to their dwelling . . . through the failure and refusal to secure the reliable and adequate functioning of the elevator." Compl. ¶ 33; *see also id.* ¶ 3 ("Defendants' [sic] have repeatedly refused and/or failed to repair or maintain the only elevator in the building."). The problem is that the Complaint's factual allegations do not plausibly support—and sometimes contradict—the idea that Defendants (or any of them) maintained a policy or practice of failing to secure the elevator's reliable operation. The Complaint identifies seven outages during the thirteen months from August 2022 through August 2023. *Id.* ¶¶ 15–19, 21–22. The Complaint alleges no facts suggesting that seven is an unusually large number of elevator outages in that roughly thirteen-month time frame. The Complaint does not specify the duration of five of the elevator outages. *See id.* ¶¶ 15–16, 18, 21–22. It alleges one outage lasted three hours and another lasted just under five hours. *Id.* ¶¶ 17, 19. Either way, the Complaint does not allege that any outage lasted for an unreasonably lengthy period. And the Complaint

acknowledges implicitly and explicitly that repairs were arranged for and made in response to these outages.  The Complaint implicitly acknowledges repairs were made because it alleges outages were intermittent.  *Id.* ¶¶ 15–19, 21–22.  In other words, it is difficult to understand how the outages could have been intermittent unless they were repaired after each outage.  And the Complaint includes two explicit acknowledgments that repairs were made.  *See id.* ¶ 19 ("She was forced to get her dog up and down the stairs several times *while waiting for a repair*." (emphasis added)); *id.* ¶ 21 (stating "the elevator 'dropped' a floor and *repair crew was called*" (emphasis added)).  As presented, these allegations do not plausibly show that any Defendant maintained a policy or practice of failing to ensure the elevator's reliability.

(c)  "The FHAA requires accommodation of a handicap if it is reasonable and necessary to afford a handicapped person the equal opportunity to use and enjoy a dwelling."  *Essling's Homes Plus, Inc. v. City of St. Paul*, 356 F. Supp. 2d 971, 979 (D. Minn. 2004) (citing 42 U.S.C. § 3604(f)(3)(B)).  To plead an FHAA failure-to-accommodate claim, a plaintiff must allege facts plausibly showing: "(1) she is handicapped within the meaning of the FHAA and defendants were aware of the handicap; (2) her requested accommodation is necessary for her to use and enjoy the dwelling; (3) her accommodation request is reasonable, and (4) defendants refused to make the requested accommodation."  *Klossner v. IADU Table Mound MHP, LLC*, 565 F. Supp. 3d 1118, 1129 (N.D. Iowa 2021) (citing *Fair Hous. of the Dakotas, Inc.*, 778 F. Supp. 2d at 1034), *rev'd on other grounds*, 65 F.4th 349 (8th Cir. 2023).  "An accommodation is reasonable if it is both efficacious and proportional to the costs to implement it."  *Groteboer v. Eyota Econ.*

*Dev. Auth.*, 724 F. Supp. 2d 1018, 1024 (D. Minn. 2010) (quoting *Dev. Servs. of Neb. v. City of Lincoln,* 504 F. Supp. 2d 714, 723 (D. Neb. 2007)).   An accommodation request must be reasonably specific.   *Summers v. City of Fitchburg*, 940 F.3d 133, 139 (1st Cir. 2019); *Rise, Inc. v. Malheur County*, No. 2:10-cv-00686-SU, 2012 WL 1085501, at *13 (D. Or. Feb. 13, 2012); *Robison v. Amcal Wood Ranch Fund XXXVII*, No. CV 07-4862 SVW (JCx), 2008 WL 9888773, at *9–10 (C.D. Cal. Sept. 23, 2008).   A failure-to-accommodate claim seems to be a predominant FHAA theory when a handicapped resident sues over a non-functioning elevator.   *See, e.g.*, *Williams v. N.Y.C. Hous. Auth.*, 408 F. App'x 389, 391 (2d Cir. 2010); *Picaro v. Pelham 1135 LLC*, No. 14-CV-7398 (JPO), 2014 WL 4678265, at *2–5 (S.D.N.Y. Sept. 19, 2014); *Dinapoli v. DPA Wallace Ave II, LLC*, No. 07 Civ. 1409 (PAC), 2009 WL 755354, at *5–6 (S.D.N.Y. Mar. 23, 2009); *Congdon*, 854 F. Supp. at 362–63.

The problem with Plaintiffs' failure-to-accommodate theory is that the Complaint does not identify a reasonably specific requested accommodation.   The Complaint alleges only that Plaintiffs asked "that the elevator be repaired to work consistently or otherwise secure access to their apartments."   Compl. ¶ 26; *see id.* ¶ 32(b) (alleging Defendants failed to accommodate Plaintiffs' handicaps by refusing to "maintain[] an operable elevator or find[] another Reasonable Accommodation for the Plaintiffs' disabilities and need to access their apartments").   The request that the elevator "work consistently" is not reasonably specific.   The Complaint identifies no objective measure by which the request might be judged.   For example, what number of outages might make the elevator's functioning impermissibly inconsistent?   Does the request imply an upper limit on the duration of any

14

one outage?  If so, what is that limit?  Regardless, the Complaint's allegations undermine any justification for Plaintiffs' request that the elevator "work consistently."  Recall the Complaint identifies seven elevator outages in a thirteen-month period and includes no allegations showing that this outage frequency is unusually high.  The Complaint, in other words, does not plausibly allege that the Walnut Towers elevator is working more inconsistently than it should.[7]  The request for "access to their apartments" when the elevator is inoperable is also not specific.  The Complaint gives no indication as to how Plaintiffs requested such access be provided.  Without more, it is difficult to understand how a Defendant might know it is complying with the alternative-access request in a way that meets Plaintiffs' reasonable demands.[8]

2

Plaintiffs' claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, is dismissal-worthy for these same reasons.  Like the FHAA, a disability-discrimination claim under the Rehabilitation Act can be for intentional discrimination, disparate impact, or a failure to reasonably accommodate, and the same analysis applies to each theory under

---

[7]     *See Congdon*, 854 F. Supp. at 362 ("Even a perfect landlord cannot maintain a completely problem-free elevator.  Elevators are subject to malfunctioning like all mechanical devices.").

[8]     There might be another problem.  It's hard to tell.  The problem arises from the Complaint's failure to allege *when* Plaintiffs requested accommodations.  The only requests Plaintiffs made to which the Complaint attaches a date were Plaintiffs' August 21, 2023 "notices to Defendant's [sic] requesting repairs to the elevator."  Compl. ¶ 23.  The problem is that the Complaint alleges no elevator outages or problems after August 9, 2023. *See generally* Compl.  In other words, the Complaint identifies no accommodation request made before August 9, 2023, and it identifies no elevator problems occurring after that date.

both the FHAA and Section 504 of the Rehabilitation Act.  *Courage to Change Ranches Holding Co. v. El Paso County*, 73 F.4th 1175, 1187 (10th Cir. 2023) (citing *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 919 (10th Cir. 2012)); *Valencia v. City of Springfield*, 883 F.3d 959, 967 (7th Cir. 2018).  The Complaint's failure to state a plausible claim under the FHAA thus dooms Plaintiffs' Rehabilitation Act claim.

V

The dismissal of Plaintiffs' two federal claims raises two questions regarding how best to proceed.  The first question concerns whether Plaintiffs should be permitted to amend their Complaint under Rule 15.  A federal court must "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Though Rule 15 describes a liberal standard, the right to amend is not absolute.  *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008).  A motion to amend may be denied for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."  *Id.* (citation omitted).  A proposed amendment is futile if it could not survive a Rule 12(b)(6) motion to dismiss.  *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018).

Here, Plaintiffs raised the possibility of amending their Complaint for the first time at the hearing on Defendants' motions, suggesting they would seek leave to amend *if* Defendants' motions were granted.  This conditional request is not sufficient to justify giving Plaintiffs the opportunity to amend.  The request does not comply with two Local Rules.  *See Ernst v. Hinchliff*, 129 F. Supp. 3d 695, 726 (D. Minn. 2015).  The request did

16

not comply with Local Rule 7.1(b).  This rule requires a party seeking nondispositive relief to file a motion, notice of hearing, memorandum of law, meet-and-confer statement, and proposed order.  Plaintiffs filed none of these materials.  The request also violated Local Rule 15.1(b).  This rule requires a party seeking leave to amend to file a version of the pleading that shows how the proposed amended pleading differs from the operative pleading (such as redlining, underlining, strikeouts, etc.).  Plaintiffs did not file this document.  *See Yohannes v. Minn. IT Servs.*, No. 21-cv-620 (PJS/ECW), 2022 WL 2788397, at *8 (D. Minn. July 15, 2022) ("Plaintiff has failed to follow Local Rule 15.1(b) by not filing a redline copy of the proposed amended complaint.  As such, the Court denies the entire Motion to Amend on this additional basis, as well as based on Plaintiff's failure to follow Local Rule 7.1 with respect to obtaining a hearing date before filing the Motion to Amend.").  This case shows why compliance with these rules matters.  Suggesting one might seek leave to amend only if the opposing party's motion to dismiss is granted risks unreasonable delay.  And without a motion and proposed amended pleading, it is not possible to know what the proposed amendments might be and impracticable to determine the futility of any possible amendments.  For all these reasons, Plaintiffs will not be given an opportunity to seek leave to amend the Complaint.

The second question concerns how best to address Plaintiffs' two state-law claims, and the better answer is to dismiss these claims without prejudice, leaving Plaintiffs the

chance to pursue them in state court.[9]   A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005) (alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  And the Eighth Circuit has instructed district courts not to exercise supplemental jurisdiction over state-law claims when, as here, all federal claims are dismissed well before trial.  *See Hervey v. County of Koochiching*, 527 F.3d 711, 726–27 (8th Cir. 2008).  There is no reason to deviate from this general rule here.  This case remains in its earliest stages.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.    Defendant Trellis Maintenance, LLC's Motion to Dismiss [ECF No.15] is **GRANTED**.

---

[9]     To be clear, the justifications (discussed in Parts II and III above) that might have prompted a non-merits-based dismissal are not intended to prevent Plaintiffs from pursuing their state-law claims in a Minnesota court.

18

2.     Defendants Trellis Management Co., Trellis Walnut Towers Developer LLC, Trellis Walnut Towers GP LLC, and Trellis Walnut Towers LLC's Motion to Dismiss [ECF No. 20] is **GRANTED**.

3.     Plaintiffs' claims under the Fair Housing Amendments Act (Count I) and Section 504 of the Rehabilitation Act (Count II) are **DISMISSED with prejudice**.

4.     Plaintiffs' claims under the Minnesota Human Rights Act (Count III) and Minn. Stat. § 504B.211 (Count IV) are **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 30, 2024                    s/ Eric C. Tostrud
                                              Eric C. Tostrud
                                              United States District Court